350 So.2d 581 (1977)
ARCHITECTONICS, INC., Appellant,
v.
SALEM-AMERICAN VENTURES, INC., Pequannock Shopping Plaza, Inc., and the Trustees of Guardian Mortgage Investors, Appellees.
No. 76-1704.
District Court of Appeal of Florida, Second District.
October 14, 1977.
*583 Leslie Telford of Nelson, Hesse, Cyril & Weber, Sarasota, for appellant.
Stephen D. Busey of Smith, Hulsey, Schwalbe & Nichols, Jacksonville, for appellees Pequannock Shopping Plaza, Inc. and Guardian Mortgage Investors.
HOBSON, Judge.
This is an interlocutory appeal from the trial court's order dismissing with prejudice three counts of appellant/Architectonics' four-count complaint. Architectonics contends that its complaint could have sufficiently stated a cause of action for an equitable lien. We agree and reverse in part. Architectonics also argues that its complaint sufficiently stated causes of action on account stated and open account. We disagree and affirm in part.
The facts alleged in Architectonics' complaint, which must be taken as true for the purpose of passing upon the sufficiency of the complaint to state a cause of action, may be summarized as follows:
In September 1973, Salem-American Ventures, Inc. (Salem) contracted with Architectonics for services in designing and constructing the Sarasota Hyatt House on land owned by Salem. After Architectonics entered into performance on the contract, Salem contracted to sell the property to Pequannock Shopping Plaza, Inc. (Pequannock). Pequannock was informed of the existence of the contract and Architectonics' intent to file a claim of mechanic's lien before Pequannock took title to the property. Pequannock induced Architectonics to delay in filing a claim of lien and to complete performance on the contract. In exchange, Pequannock promised to guarantee payment on the contract and to subject the property to any claim of lien later filed by Architectonics. Architectonics completed performance under the contract, the product of which was incorporated in the now substantially completed structure. Pequannock refused Architectonics' request for payment of the balance due on the contract.
Guardian Mortgage Investors (Guardian) is the construction mortgage lender as the result of transactions with Salem approximately one year before Architectonics' contract with Salem. After Architectonics' request for payment from Pequannock, Guardian, as the real party in interest, requested and received a statement of account from Architectonics. Guardian did not give Architectonics notice of any dispute of the account and did not pay the balance.
Architectonics brought suit on a claim for approximately $50,000. The third amended complaint sought relief: from Pequannock on a contract theory; by imposition of an equitable lien on the improved property; from Guardian on the theory of "open account;" and from Guardian and Salem on the theory of account stated. A count in a prior complaint sought to foreclose a mechanic's lien but was dismissed as unenforceable. Section 713.03, Fla. Stat. (1975). Architectonics does not here contend that dismissal of that count was improper.
Salem defaulted and has not participated in this appeal. Pequannock filed a motion to dismiss the count for an equitable lien. Guardian sought dismissal of the counts for an equitable lien, recovery on open account, and recovery on account stated. The trial court dismissed the count for an equitable lien as to both Pequannock and Guardian because Architectonics failed to state a cause of action and failed to allege inadequacy of a remedy at law. The trial court dismissed the counts on open account and account stated as to Guardian because the complaint established that there was no course of dealings between Architectonics and Guardian.
Architectonics first contends its complaint alleged facts sufficient to entitle it to an equitable lien on the improved property prior in dignity to the interests of both Pequannock and Guardian. An equitable lien is a remedial tool used to prevent *584 an inequity of one party as against another. Crane Co. v. Fine, 221 So.2d 145 (Fla. 1969). It may be used as a means of enforcing, against a piece of property, a party's obligation which has resulted in a benefit to that property. This obligation may arise through an agreement relating to the property which contemplates use of the property as security for the agreement or where the circumstances are such that considerations of right and justice require that the property serve as security for an obligation. See Jones v. Carpenter, 90 Fla. 407, 106 So. 127 (1925). Imposition of an equitable lien upon specific property is particularly appropriate where the creditor has lost security in that property in reliance upon the false representations of one who later claims a superior interest in the property. See Lewinson v. Shaw, 56 So.2d 449 (Fla. 1952) and Palmer v. Edwards, 51 So.2d 495 (Fla. 1951).
Fitting snugly within these formulas is the classic case of Folsom v. Farmers' Bank of Vero Beach, 102 Fla. 899, 136 So. 524 (1931). In Folsom a man named Harris was the mortgagee on instruments he pledged to the bank as security for his debt to the bank. Harris persuaded the bank to allow him to take the instruments, foreclose upon the mortgage which had gone into default, and buy the property. However, rather than executing new instruments making the bank the new mortgagee of the property as promised, Harris transferred the property without consideration to his daughter, Folsom. The trial court's order overruling demurrers to the bank's complaint for an equitable lien was affirmed. The bank, having lost the security of the pledged mortgage and notes upon Harris' representations, was entitled to the security of an equitable lien on the property which in effect fulfilled Harris' promise.
In the instant case also, the creditor, Architectonics, was induced to part with security in reliance upon the representations of one now claiming a prior interest in the property. By relying upon Pequannock's false promises of payment and to subject its property to Architectonics' claim, Architectonics failed to establish and perfect the security of its mechanic's lien in the property. If Architectonics proves these allegations, it is entitled to an equitable lien prior in dignity to Pequannock's interest. This result not only is required by considerations of right and justice, but also holds Pequannock to its promise of security. See Hall's Miscellaneous Ironworks, Inc. v. All Southern Investment Company, Inc., 283 So.2d 372 (Fla. 1st DCA 1973).
The count for an equitable lien was also dismissed with prejudice because Architectonics failed to allege the inadequacy of a remedy at law, as where the obligor is insolvent. Although dismissal for this reason is supported by Lewinson v. Shaw, supra, under the authority of that case the dismissal must be reversed insofar as it is with prejudice. See also Marshall v. Scott, 277 So.2d 546 (Fla. 2d DCA 1973). The original obligor, Salem, has not filed any paper in the trial court and has defaulted. There is nothing in the record which shows that Architectonics' remedies at law are necessarily adequate. Architectonics may well be able to allege inadequacy of a remedy at law. Accordingly, although dismissal was warranted, dismissal should have been with leave to amend.
Architectonics is not barred from an equitable lien by its failure to perfect its mechanic's lien. The case of Crane Co. v. Fine, supra, has laid to rest prior inconsistencies between opinions on this point. In that case the Florida Supreme Court definitively established that the failure to perfect his statutory rights under the Mechanic's Lien Act, Ch. 84, Florida Statutes (1975) does not foreclose a party from an equitable lien where special or peculiar equities exist. Architectonics' loss of its mechanic's lien in reliance upon the landowner's representations gives rise to special or peculiar equities. Hall's Miscellaneous Ironworks, Inc. v. All Southern Investment Company, Inc., supra. Architectonics may seek an equitable lien notwithstanding its failure to perfect its mechanic's lien.
The trial court erred in dismissing with prejudice Architectonics' count for an *585 equitable lien prior to Pequannock's interest. However, the trial court did not err in dismissing that count as it concerns Guardian. Architectonics attached to its complaint the construction loan instruments between Salem and Guardian. These attachments are considered a part of the pleadings for all purposes. Fla.R.Civ.P. 1.130(b). The complaint, through its attachments, shows that Guardian's interest in the property arose approximately one year prior to Pequannock's alleged representations to Architectonics. There are no allegations in the count for an equitable lien that Guardian had knowledge of, or participated in, Pequannock's representations. Nor has Architectonics alleged that Guardian has retained any portion of the loan funds committed to the construction of the building. Cf. Crane Co. v. Fine, supra. This count fails to contain any allegations entitling Architectonics to an equitable lien prior to the interest of Guardian, and dismissal of Guardian from this count was proper. O.H. Thomason Builders' Supplies, Inc. v. Goodwin, 152 So.2d 797 (Fla. 1st DCA 1963), cert. denied, 157 So.2d 818 (Fla. 1963).
The counts seeking recovery on open account and account stated were properly dismissed as against Guardian. The "open account" claim alleges little more than that Architectonics is owed money and that, at Guardian's request, Architectonics sent Guardian, as the real party in interest, a statement reflecting this debt. The "account stated" claim is based upon allegations that Architectonics "had business transactions" with Salem and Guardian, and that "they agreed to the resulting balances," a statement of which was sent to Salem and Guardian without subsequent objection. The trial court dismissed these counts as against Guardian because they did not allege any ultimate facts which would show a course of dealing between Architectonics and Guardian. Architectonics' only argument in this regard is that dismissal was improper because the counts strictly followed Official Forms numbers 1.932 and 1.933.
A note at the end of each of these forms cautions the pleader that a copy of the account showing each item, the time of accrual, and amount of each entry, must be attached. The statement of account sent by Architectonics to Guardian was properly attached. This attachment became a part of the complaint for all purposes. Fla.R. Civ.P. 1.130(b). This statement establishes that any business transactions were between Salem and Architectonics and that Guardian was not a party to any transactions with Architectonics. Guardian was, at most, an interested observer to the business transactions. The rendition of an account statement does not create an obligation but only furnishes the basis upon which may be found an admission of the existence and amount of a pre-existing obligation. Where there has been no business transactions giving rise to the pre-existing obligation, a statement of account will not support an action on open account or account stated. See Gendzier v. Bielecki, 97 So.2d 604, 608 (Fla. 1957). The face of Architectonics' complaint shows without contradiction that there was no obligation of Guardian to Architectonics which pre-existed the account statement. The trial court did not err in dismissing the claims on open account and account stated.
That portion of the trial court's order dismissing Architectonics' count for an equitable lien is modified to grant leave to amend and as modified is affirmed. The remaining portions of that order are also affirmed.
BOARDMAN, C.J., and GRIMES, J., concur.