In the Matter of BOB COOPER, INCORPORATED, d/b/a BCI Utilities Contractor, Debtor(s).

BOB COOPER, INCORPORATED, d/b/a BCI Utilities Contractor, Plaintiff,

v.

The CITY OF VENICE, Empire Pipe & Supply Co., and General Telephone of Florida, Defendant.

Bankruptcy No. 84–811.
Adv. No. 84–447.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Oct. 1, 1986.

Shirley Arcuri, Tampa, Fla., for plaintiff.

Don M. Stichter, Emmett Abdoney, Tampa, Fla., for Empire Pipe & Supply.

Lorin Albeck, Tampa, Fla., for General Telephone Co. of Fla.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS ADVERSARY proceeding was commenced by Bob Cooper, Inc., d/b/a BCI Utilities Contractor (BCI), a Debtor seeking relief under Chapter 11 of the Bankruptcy Code. The matter under consideration is a Motion for Summary Judgment filed by Empire Pipe & Supply Company (Empire Pipe) against the complaint of BCI, the Plaintiff, and on its crossclaim against General Telephone Company of Florida (General). Empire Pipe contends that there are no genuine issues of material fact and that Empire Pipe is entitled to judgment as a matter of law. The facts relevant and germane to a resolution of this controversy, as determined from the record and argument of counsel, are as follows:

The original complaint was filed by BCI on October 3, 1984, and named the City of Venice, Empire Pipe, and General as De-

fendants. The complaint set forth general allegations in four counts in which BCI sought a turnover of funds, an accounting, an injunction, and a contempt citation for an alleged violation of § 362 of the Bankruptcy Code. A description of the relationships and respective positions of the parties is necessary in order to make a proper determination of the instant Motion for Summary Judgment.

Initially, General contracted with the City of Venice for the installation of a water main. General also entered into a contract with BCI for installation of some additional cable conduits at the same location as the water main project. Thus, on the telephone cable installation contract, the City of Venice was the owner/contractor, and BCI was the subcontractor; and on the water main installation contract, the City of Venice was the owner, General was the contractor, and BCI was the subcontractor. BCI furnished labor and materials on both jobs and purchased some of the materials for these two jobs from Empire Pipe on an open account. There is no dispute that Empire Pipe did not obtain and does not claim to have a security interest in the contract rights or accounts receivable of BCI. Sometime thereafter, BCI and the City of Venice entered into a separate contract for some additional work needed to be done in connection with the installation of the water line. It is also conceded that BCI used in the performance of its direct contract with the City of Venice material purchased from Empire Pipe.

Empire Pipe's crossclaim against General and the procedural history which provides the underpinning for the Motion for Summary Judgment is as follows: Initially General filed a Motion and sought an order restraining Empire Pipe from pursuing any claim against General. It also filed an answer and a counterclaim to BCI's Complaint. The counterclaim is in the nature of a statutory interpleader in which General admitted that it held $25,164.88 and that these monies are claimed both by BCI and Empire Pipe and sought a determination by the Court as to which of the two are entitled to these funds. Thereafter, Empire

Pipe filed its answer to General's crossclaim and basically admitted all allegations set forth in the crossclaim. In addition to its answer, Empire Pipe also filed a pleading titled "Complaint in Interpleader." On April 25, 1986, this Court entered an order and held that the pleading was, in fact, a crossclaim against General which asserted a right to funds superior to the rights of BCI.

Thereafter, General deposited $25,164.88 in the registry of this Court pursuant to an order entered on General's Complaint for Interpleader. This sum, however, does not include the sum of $3,215.50 withheld by General owed to BCI based on General's claim to a right of setoff. Empire Pipe seeks a determination that the sum of $3,215.50 withheld by General is subject to its equitable lien. It is without dispute that the sum of $6,400 paid to BCI by the City of Venice pursuant to this Court's order entered May 20, 1985, was for work done by BCI on its contract with the City of Venice and said sum is still subject to an equitable lien claim of Empire Pipe.

Basically, the claim of Empire Pipe is based on the contention that the funds owed to BCI by General and the City of Venice should be impressed with an equitable lien in its favor, thus, granting Empire Pipe a superior right to these funds and the claims of BCI.

Based on the foregoing it is evident that the initial inquiry must be addressed to Empire Pipe's right to an equitable claim under the applicable local law. This is so because if it has none, the enforceability of its claim is a matter of no consequence because the issue is academic. The threshold issue is first whether Empire Pipe may assert an equitable lien under the general principals governing this issue by Florida law with respect to the funds involved in this controversy; second, if an equitable lien is cognizable under Florida law, and Empire has, in fact, an equitable lien on the funds in question, whether or not such equitable lien is enforceable by Empire Pipe against BCI, the Debtor-in-Possession,

under the applicable provisions of the Bankruptcy Code.

It is without dispute that one who has performed services or furnished materials in the improvement of real property is not limited to a proceeding under mechanics' lien law, but may proceed to establish an equitable lien on the property in question. *Crane Company v. Fine,* 221 So.2d 145 (Fla.1969); *See also Tucker v. Prevatt Builders, Inc.,* 116 So.2d 437 (Fla.App. 1959); *Union Trust Company of St. Petersburg v. Wittmann,* 145 So.2d 540 (Fla. App.1962).

To establish an equitable lien one must allege and prove an entitlement to such lien within certain principles recognized by the Courts. Florida cases consistently support the proposition that an equitable lien arises in one of two ways: (1) a written contract which shows an intention to charge some particular property with a debt or obligation; or (2) is declared by a court of equity out of general consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings in the particular case. *Jones v. Carpenter,* 90 Fla. 407, 106 So. 127 (1925). In this proceeding, there is no allegation that Empire Pipe has any written contract, therefore, any equitable theory must be supported on the second ground.

The Florida Supreme Court in *Crane Company v. Fine, supra,* recognized an equitable lien on a contractor's holdback fund and held that a materialman whose materials were incorporated in the improvement of realty under a subcontract and who remained unpaid at the time the party with whom he was in privity abandoned the contract had a right of a special nature in the funds due and owing on account of material supplied by the materialman to the improvement. The *Crane* Court held that the "particular property" in which the plaintiff had "right of a special nature" was the fund held by the general contractor due and owing to the subcontractor on account of materials supplied by the materialman to the improvement. *See also Peninsular Supply Company v. C.B. Day Re-*alty of Florida, Inc., 423 So.2d 500 (Fla. 3d D.C.A.1982); *Combs v. St. Joe Paper Makers Federal Credit Union,* 383 So.2d 298 (Fla. 1st D.C.A.1980).

Under the holding of these cases, the doctrine of equitable liens comes into existence to remedy those situations where, as here, there is either an absence of an available lien or no adequate remedy at law. *See In re Estate of Donner,* 364 So.2d 742 (Fla. 3d D.C.A.1978). Equitable liens may be imposed by a court of equity out of a general consideration of right and justice as applied to the relations of the parties and the circumstances of the dealings in a particular case. Based on the foregoing, this Court is satisfied that under Florida law Empire Pipe has a cognizable equitable lien against the fund. This leaves for consideration the question of whether Empire Pipe's equitable lien is enforceable against BCI, the Debtor-in-Possession. Historically equitable liens under local law found a hostile environment in bankruptcy cases. The Act of 1898 expressly dealt with this subject and provided that § 60a(6), that beyond [t]he recognition of equitable liens where available means of perfecting legal liens have not been employed is hereby declared to be contrary to the policy of this section." This provision was, of course, fully consistent with the overall policy of the Bankruptcy Act which was to place the Trustee in a position of an ideal nonexisting judgment lien creditor who obtained the judgment against the bankrupt upon the date of bankruptcy whether or not such creditor, in fact, existed, and with the powers of a creditor who upon the date of bankruptcy obtained an execution returned unsatisfied against the bankrupt, and also with the powers of a creditor who upon the date of bankruptcy obtained the lien by legal or equitable proceedings upon all property upon which a creditor of the bankrupt could have obtained such lien on a simple contract, § 70(c)(1), (2), and (3) of the Act of 1898.

It is true that the Bankruptcy Code has no corresponding provision of § 60(a)(6) of the Bankruptcy Act; however, the Reform

Act of 1978 basically adopted all the voiding powers available to the Trustee with some modifications, and in some respects even expanded them to an extent which makes the provision far more reaching than that which was available to the Trustee under Bankruptcy Act of 1898. Thus, § 544(b) now places the Trustee in a position vis-a-vis real estate of a bona fide purchaser of real property who, of course, could defeat all liens and encumberances not of record and without notice § 544(a)(3).

Thus, since there's nothing contrary in the Code, there is no reason to assume that the ommission by Congress of a provision dealing with equitable liens was intentional and should be construed as an indication that the Trustee is no longer able to defeat nonrecorded secret unperfected liens including equitable liens when there was an opportunity to obtain a lien by legal means.

In the present instance there was nothing which prevented Empire Pipe from obtaining a security agreement and security interest from BCI on all its accounts and contracts receivable under the Uniform Commercial Code before it agreed to sell the pipes to BCI. Moreover, Empire Pipe could have insisted that before it furnished goods on credit to BCI on these two construction projects, BCI obtained a performance and payment bond pursuant to the applicable statute of this state which requires contractors and subcontractors to furnish a payment and performance bond on public works and public projects. *Fla. Stat.* § 255.05 (1986).

There is no doubt that a Debtor-in-Possession has the same rights and powers of a Trustee in bankruptcy and may attack and invalidate lien claims not properly perfected in the same manner as a Trustee. *See In re Deeb*, 47 B.R. 848 (Bankr.N.D. Ala.1985); *In re Pirsig Farms, Inc.*, 46 B.R. 237 (Bankr.D.Minn.1985); *In re Skyland*, 28 B.R. 354 (Bankr.W.D.Mich.1983). BCI, as a Debtor-in-Possession, can resort to the Trustee's special voiding powers granted by § 544 of the Bankruptcy Code, commonly referred to as the "strong-arm clause," which in pertinent part provides as follows:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of the property of the debtor for any obligation incurred by the debtor that is voidable by—

(1) A creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) A creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists.

The strong-arm clause gives the trustee and in turn a Debtor-in-Possession the right to avoid any obligation that would be voidable by a judgment creditor with a judicial lien on all properties subject to a judicial lien at the commencement of the bankruptcy case or in the alternative the rights and powers of a judicial lien creditor with a Writ of Execution returned unsatisfied at the commencement of the bankruptcy case. The Trustee and, therefore, the Debtor-In-Possession is charged only with such notice as appeared on the public record at the time its lien attached, and is not charged with the debtor's actual knowledge of the circumstances. At the time this Chapter 11 case was commenced, there was no lien on record in favor of Empire Pipe on either of the contract rights or on its receivables. Thus, the equitable lien of Empire Pipe is no different from a contractual security interest which without doubt could be defeated by a Debtorin-Possession. Thus, the right of BCI, a Debtor-in-Possession to the funds in question is supe-

rior to Empire Pipe's equitable liens pursuant to § 544(a) of the Bankruptcy Code.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that BCI, a Debtor-in-Possession, has a superior position to the equitable liens of Empire Pipe under § 544(a) of the Bankruptcy Code.